**IN THE UNITED STATES COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**RINALDO EUGENE NORRIS**                                          **PLAINTIFF**

**v.**                                                        **No. 3:22CV36-JMV**

**WARDEN JESSIE WILLIAMS, ET AL.**                              **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Rinaldo Eugene Norris, who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. [1] The plaintiff alleges that he is a homosexual inmate who prefers to dress as a woman – and whose appearance raises the risk of assault during his incarceration. He alleges that, on several occasions, he was assaulted by inmates and, once, by a member of the Mississippi Department of Corrections ("MDOC") staff. In addition, Norris alleges that he received insufficient food during his stay at the Wilkinson County Correctional Facility ("WCCF").

The defendants have moved for summary judgment, arguing that the instant case should be dismissed without prejudice for failure to exhaust administrative remedies. The plaintiff has not responded to the motion; the deadline to do so has expired, and the matter is ripe for resolution. For

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

the reasons set forth below, the motion by the defendants for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed

drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

### The Plaintiff's Allegations

In his complaint, the plaintiff alleges the violation of Constitutional rights arising out of a series of incidents allegedly occurring from 2020 to 2021. *See, generally,* Doc. 1; Doc. 31 at p. 2. Norris states that he is a homosexual inmate who prefers to dress as a woman and has undergone mental health treatment. Doc. 31 at 1. He believes that his appearance raises the risk of assault during his incarceration. *Id*. at 2. His allegations involve two facilities—Marshall County Correctional Facility ("MCCF") and Wilkinson County Correctional Facility ("WCCF"). *Id*.

He alleges he was attacked by several inmates while housed in the Delta Three Unit of MCCF. *Id*. He states that, after the alleged attack, he was placed in administrative segregation. *Id*.

He claims he was attacked nearly three months later, but in a different unit (Delta Three Unit). *Id*. He states that he told Defendant Smith and other MDOC staff about the attack and that he feared for his life. *Id*. Norris claims that he requested to be placed in protective custody or moved from the facility entirely, rather than being placed in administrative segregation. *Id*. He claims that he nonetheless remained in administrative segregation. *Id*. at 3.

He alleges that some months later, he was attacked again while in Delta Three Unit. *Id*. He states the defendant and other MDOC staff moved him back to Delta Two Unit. *Id*.

- 3 -

He also claims that, while in Delta Two, a homosexual inmate stabbed him with a sharp object – and that he was once again placed in administrative segregation. *Id.* Norris then claims that, once, C.I.D. Officer Harris conducted a strip-search and asked Norris for oral sex, which he claims he performed. *Id.* He alleges that Harris then sodomized him and told him not to tell anyone. *Id.* Norris was later moved to the Mississippi State Penitentiary ("MSP" or "Parchman"). *Id.*

About six months later, Norris was transferred to WCCF. *Id.* He alleges that staff there did not provided sufficient food – and he thus lost twenty pounds. *Id.* at. 4.

For relief, he seeks mental health therapy, $50,000 from each defendant for compensatory damages, $87,000 for punitive damages, and to be transferred from the State of Mississippi's prison system. [Doc. 1] at 5.

## Undisputed Material Facts

This case turns on whether Norris initiated a prison grievance and pursued that grievance to conclusion – and thus exhausted his administrative remedies before filing the instant case. Hence, only the facts regarding exhaustion are material, and the court will consider only those facts.

The plaintiff's statements in his complaint reveal that he did not complete the grievance process as to any of his claims. Norris used the court's form complaint for seeking relief under 42 U.S.C. § 1983 – which includes an inquiry into exhaustion. Doc. 1 at 2-3.

Regarding question 6, which asked if he presented the same facts and issues in his grievances, he checked "Yes." *Id.* For question 7C, which asked him to state everything he did to present his grievances, he stated that he filed a grievance on October 7, 2020, claiming he had been assaulted and seriously injured by inmates while housed at Marshall County Correctional Facility. *Id.* He also stated that he informed them he was filing suit. *Id.*

However, in response to question 7D, which asked about an official response to the grievance, Norris stated he was "still awaiting a response." *Id.* He then noted that he had received

- 4 -

correspondence informing him that his grievance had been backlogged (which occurs when an inmate files a new grievance while one or more earlier grievances are pending). *Id.* He completed the response to question 7D, noting that he was supposed to hear something back within 90 days but had not received a response as of the date he filed his complaint. *Id.* Further, Norris did not provide any statements regarding an appeal of the grievance. Additionally, in the form complaint, Norris did not mention the exhaustion of claims surrounding allegedly insufficient food rations at WCCF. *See, generally,* Doc. 1.

### Exhaustion of Administrative Remedies

As discussed below, the plaintiff did not exhaust his administrative remedies available through the MDOC grievance process before filing the instant case. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "*proper* exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006) (emphasis added); *see also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008) (the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement) (*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11, 2008) (under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory.

*Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. The Mississippi Department of Corrections has thus set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. 2000). An inmate must complete two steps to exhaust the ARP process. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The inmate may initiate the two-step ARP grievance process by submitting his allegations in writing to the prison's Legal Claims Adjudicator within thirty days of the incident.[2] *Howard v. Epps*,

---

[2] If an inmate is found guilty of a prison rule violation, he may appeal that finding through the ARP process. Inmate Handbook, Section VIII, Paragraph XI. However, the appeal of a rule violation through the ARP is a one-step process (in contrast to the two-step process for resolving grievances).

No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the complaint and determines whether or not to accept it into the ARP process as a grievance. *Id.* The screening phase thus operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances.

As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra.* Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).[3]

If accepted as a valid grievance, the complaint is forwarded to the appropriate official, who

---

*Id.*

[3] A court may take judicial notice of the contents of a state agency's website. *See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (judicial notice of approval by the National Mediation Board published on the agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (judicial notice of a Texas agency's website).

then issues a First Step Response to the complaining inmate.[4]  *Id*.  If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by completing the appropriate ARP form and sending it to the Legal Claims Adjudicator.  *Id*.  The Superintendent, Warden, or Community Corrections Director will then issue a final ruling (the Second Step Response) – which completes the ARP process.[5]  *Id*.  If the inmate is unsatisfied with that response, he may file suit in state or federal court.  *Id*.

**Discussion**

In this case, the plaintiff did not exhaust his administrative remedies as to any of his claims before seeking relief in federal court – as required by the Prison Litigation Reform Act.  The present case is legally indistinguishable from a Fifth Circuit case originating with our sister court in the Southern District of Mississippi.  *See Wilson v. Epps*, 776 F. 3d 296 (5th Cir. 2015).  In *Wilson*, the plaintiff filed a *pro se* prisoner suit under 42 U.S.C. § 1983 alleging that MDOC defendants violated his constitutional rights.  *Id*. at 298.  He used the standard form complaint provided by the correctional facility.  *Id*. at 301.  Several of the questions within the form complaint dealt with exhaustion.  *Id*.  Question 6 inquired whether the grievance presented the same facts and issues alleged in Wilson's complaint.  *Id*.  He checked "yes."  *Id*.  Question 7C directed him to state the actions he had taken to present his grievance.  *Id*.  Wilson responded that he submitted 10 grievances and that he wrote a letter

---

[4] The submission and screening of the plaintiff's complaints do not constitute the beginning of the ARP process.  Instead, the ARP grievance process begins when the inmate's submission is "accepted" as a grievance *after* initial screening.  Inmate Handbook, Chapter VIII, Paragraph IV(H).

[5] The grievance process will also be deemed complete if more than 90 days elapses from the beginning of the process (acceptance of the grievance after screening) without issuance of a Second Step Response Form (the normal way to complete the grievance process).  Inmate Handbook, Chapter VIII, Paragraph VIII(A).  In the absence of a response in a step of the ARP process, the inmate may not simply wait for the 90-day deadline to expire.  *Id*.  Instead, for each step without a response, he must wait until the deadline for a written response for that step expires, then move to the next step in the process.  *Id*.  If the inmate has submitted the proper forms for each step, yet 90 days elapses without issuance of a Second Step Response Form, then he has completed the grievance process and may then seek relief in State or Federal court.

to the warden. *Id*. at 302. Question 7D directed him to state what official response he received, as well as whether he applied for administrative review of the decision. *Id*. Wilson answered that he received no initial response for his 10 grievances – and that he could not get his complaints resolved – or even addressed. *Id*.

Based on Wilson's responses to the questions regarding exhaustion, the MDOC defendants argued that he had failed to exhaust his administrative remedies before filing suit. *Id*. at 301. The district court granted the defendants' motion, dismissed Wilson's claims as unexhausted, and Wilson appealed. *Id*. at 299. On appeal, the Fifth Circuit held that the statements in Wilson's complaint established that there was no genuine issue of material fact regarding whether he exhausted his administrative remedies before filing suit. *Id*. at 302. The court relied upon *Hicks v. Lingle*, 370 Fed. App'x. 497, 498 (5th Cir. 2010), which held that "[d]ismissal may be appropriate ... when, on its face, the complaint establishes the inmate's failure to exhaust." *Id*. The Fifth Circuit also held that the prison's failure to respond could only result in exhaustion if Wilson pursued an appeal of the grievance – and if the prison, at that time, did not make a timely response. *Id*. Wilson did not, however, allege in his complaint that he had done so. *Id*. As such, the Fifth Circuit found that no genuine issue of material fact existed regarding whether Wilson exhausted his administrative remedies – and that summary judgment was proper. *Id*.

### The Present Case Parallels *Wilson*

The facts of the present case parallel those in *Wilson*, and the statements Norris provided in the form complaint are likewise sufficient to establish that he failed to exhaust the grievance process before filing the instant suit. Norris used the same form complaint as Wilson; as such, the numbering

of the questions is the same for both.[6]  Norris' complaint included a section regarding exhaustion.

Doc. 1 at 2-3.   In response to Question 6, Norris checked "Yes" when asked whether he presented the

same facts and issues in his grievances as in his complaint.  *Id*.  He responded in question 7C

(regarding the measures he took to present his grievances) that, on October 7, 2020, he filed a

grievance alleging that he had been assaulted and seriously injured by inmates while housed at the

Marshall County Correctional Facility – and stating that he would file suit.  *Id*.  Finally, in answer to

question 7D (which asked about an official response to the grievance), Norris stated that he was

supposed to receive a response within 90 days – but had not heard anything as of the date he filed the

instant complaint.  *Id*.  He did not allege that he had pursued an appeal; nor did he mention exhaustion

of his claims regarding insufficient food rations at WCCF.  *See, generally*, Doc. 1.  As such, the

allegations in the plaintiff's complaint establish that he did not exhaust the grievance process as to any

of his claims before filing the instant suit, which should be dismissed for that reason.

### Conclusion

For the reasons set forth above, the motion by the defendants for summary judgment will be

granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative

remedies.[7]  A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 18th day of February, 2025.

/s/   Jane M. Virden
UNITED STATES MAGISTRATE JUDGE

---

[6] Both this court and our sister court use nearly identical *pro se* prisoner form complaints for §1983 cases, as both are taken, nearly verbatim, from the model complaint promulgated by the Administrative Office of the Courts.

[7] The dismissal of this case also applies to the remaining unserved defendants because, where a defending party shows that a plaintiff has no cause of action, the defense also benefits an unserved or defaulting defendant.  *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).